IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 2, 2020 Session

**IN RE ASHLYNN H.**

**Appeal from the Chancery Court for Coffee County**
**No. 2019-CV-91     Vanessa A. Jackson, Judge**

_____

**No. M2020-00469-COA-R3-PT**

_____

A father appeals the termination of his parental rights to his child. The trial court determined that there were statutory grounds for terminating the father's parental rights and that termination was in the child's best interest. On appeal, we conclude that the father was given sufficient notice of three statutory grounds: abandonment by failure to visit or support the expectant mother, abandonment by wanton disregard, and failure to manifest an ability and willingness to assume custody or financial responsibility of his child. The record contains clear and convincing evidence to support two of the grounds for termination. But, because the trial court's order lacks sufficient findings regarding the child's best interest, we vacate and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, P.J., M.S., and ANDY D. BENNETT, J., joined.

Peter Trenchi, Sewanee, Tennessee, for the appellant, Taylor J.

Joseph E. Ford, Winchester, Tennessee, for the appellees, Jeremy D., Stephanie D., and Emily H.

**OPINION**

**I.**

Just over a month after Ashlynn's birth, Jeremy D. and Stephanie D. petitioned to terminate the parental rights of her biological father, Taylor J. ("Father"), and to adopt her.

*See* Tenn. Code Ann. § 36-1-113(b)(1) (Supp. 2020). The child's mother, Emily H. ("Mother"), joined in the petition for the purpose of consenting to the adoption. *See id.* § 36-1-117(g) (Supp. 2020). The alleged grounds for terminating Father's parental rights were included in a single paragraph in the petition. The petition alleged that,

> [a]s grounds for the issue of such an order terminating the rights of the biological father, [Father], your Petitioners would aver that he has abandoned said child as that term is defined in T.C.A. 36-1-102(a)(1)§(3) [sic] and that he has willfully failed to visit or willfully failed to make reasonable payments toward the support of the child's mother during the four months immediately preceding the birth of the minor child. Further your Petitioner [sic] would aver that the Respondent herein, the biological father of the minor child, is incarcerated at the time of the institution of this action to declare the child an abandoned child and the said Respondent/biological father, has engaged in conduct prior to incarceration that exhibits of [sic] disregard for the welfare of the child. Further Respondent has failed, without good cause or excuse, to pay a reasonable share of prenatal, and postnatal expenses involving the birth of the child in accordance with his financial means promptly upon his receiving notice of the child's impending birth. In addition, the Respondent has failed to manifest an ability and willingness to assume legal and physical custody of the minor child. Further, placing custody of the child in the Respondents [sic] legal and physical care would pose a risk of substantial harm to the physical or psychological welfare of the child. Petitioners would aver that the circumstances of the Respondent as set forth above are persistent and he has not made an adjustment of these circumstances to make it safe and in the child's best interest to be in his home.

Although including a reference to the statutory definition of "abandonment," the petition did not cite to any specific statutory ground for terminating Father's parental rights.

Father filed a pro se response to the petition objecting to the termination of his parental rights and requesting appointed counsel. The court obliged, and appointed counsel filed an answer to the petition. The answer generally denied the grounds for termination but raised no affirmative defenses. *See id.* § 36-1-102(1)(I) (Supp. 2020) (making "[t]he absence of willfulness . . . an affirmative defense pursuant to Rule 8.03 of the Tennessee Rule of Civil Procedure" to the ground of abandonment by parent).

A trial took place in which only Mother, Father, and the prospective adoptive parents testified. Following the trial, the court entered an order terminating parental rights and granting the petition for adoption. As for the specific grounds for terminating Father's parental rights, the court concluded as follows:

[T]he grounds established for termination of parental rights by clear and convincing evidence adduced by the Petitioners herein are as follows: abandonment of the minor child, Ashlynn . . . , as that term is defined in T.C.A. 36-1-102(a)(1)(3) [sic] in that he has willfully failed to visit or willfully failed to make reasonable payments toward support of the minor child's mother during the four months immediately proceeding [sic] the birth of [the] minor child; he has engaged in conduct prior to his incarceration, where he was at the time of the filing of this Petition, that exhibits disregard for the welfare of the minor child, in that he has exhibited no stable work history and testified that that the job he had for two weeks is the longest job he has ever held in his life, he has no stable home and is currently living with a woman while not on the lease of her apartment and has no legal right to be there, he has multiple prior criminal convictions, and his lifestyle does not appear to have changed, and further, he has shown no proof of ability to properly provide for the care of the minor child himself at all; he has willfully failed and refused to support the minor child after its birth or to visit with the child after its birth for a period of at least four months; he failed to pay without good cause or excuse a reasonable share of prenatal or postnatal expenses involving the birth of the child in accordance with his financial means promptly upon his receiving notice of the child's impending birth; he has failed to manifest an ability to assume legal and physical custody of the minor child as set forth above due to his failure to have a stable job history, stable home, or stable lifestyle of any sort; that the placing of custody of the minor child in the Respondent's legal and physical care would pose a risk of substantial harm to the physical or psychological welfare of the child due to the Respondents [sic] history of violent crime and threats toward birth mother . . . .

The court was more succinct in its analysis of whether termination of parental rights was in the child's best interest. The court concluded that it "ha[d] been proven by clear and convincing evidence that it is in the best interest of the minor child, Ashlynn . . . , for the parental rights of the biological parents, [Mother and Father], to be terminated in and to said child."

## II.

A parent has a fundamental right, based in both the federal and state constitutions, to the care and custody of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996); *In re Adoption of Female Child*, 896 S.W.2d 546, 547 (Tenn. 1995). But parental rights are not absolute. *In re Angela E.*, 303 S.W.3d at 250. The government's interest in the welfare of a child justifies interference with a parent's constitutional rights in certain circumstances. *See* Tenn. Code Ann. § 36-1-113(g).

3

Tennessee Code Annotated § 36-1-113 sets forth both the grounds and procedures for terminating parental rights. *In re Kaliyah S.*, 455 S.W.3d 533, 546 (Tenn. 2015). Parties seeking termination of parental rights must first prove the existence of at least one of the statutory grounds for termination listed in Tennessee Code Annotated § 36-1-113(g). Tenn. Code Ann. § 36-1-113(c)(1). If one or more statutory grounds for termination are shown, they then must prove that terminating parental rights is in the child's best interest. *Id.* § 36-1-113(c)(2).

Because of the constitutional dimension of the rights at stake in a termination proceeding, parties seeking to terminate parental rights must prove both the grounds and the child's best interest by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). This heightened burden of proof serves "to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights." *Id.* "Clear and convincing evidence" leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d at 596.

We review the trial court's findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); Tenn. R. App. P. 13(d). We then "make [our] own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d at 596-97. We review the trial court's conclusions of law de novo with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007).

A.

In his appeal, Father raises three issues for our review. None of the three relate to the manner in which the grounds for terminating his parental rights were pleaded. But at oral argument, counsel for Father and counsel for Mother and the prospective adoptive parents could not agree on the number of statutory grounds supporting termination that were alleged in the petition. Counsel for Father contended that only two statutory grounds were properly alleged; counsel for Mother and the prospective adoptive parents contended that "at least four" statutory grounds were alleged. The petition itself includes a hodgepodge of words from the various statutory grounds that might support termination of parental rights.

4

Parental rights can only be terminated on grounds that were alleged in the termination petition. *See In re M.J.B.*, 140 S.W.3d 643, 655-56 (Tenn. Ct. App. 2004). Notice is "a fundamental component of due process." *In re W.B., IV*, M2004-00999-COA-R3-PT, 2005 WL 1021618, at *13 (Tenn. Ct. App. Apr. 29, 2005); *see also Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002) ("Basic due process requires 'notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (citation omitted)). Pleadings should give the opposing party enough notice of the issues to prepare a defense. *Keisling*, 92 S.W.3d at 377. In the context of parental termination, due process requires that the parent be notified of the alleged grounds for termination. *In re Jeremiah N.*, No. E2016-00371-COA-R3-PT, 2017 WL 1655612, at *8 (Tenn. Ct. App. May 2, 2017).

Based on the petition, we conclude that three statutory grounds were properly before the court. The petition properly alleged facts that could support two definitions of abandonment: abandonment by failure to visit or make reasonable payments "toward the support of the child's mother during the four (4) months immediately preceding the birth of the child" and abandonment by wanton disregard. *See* Tenn. Code Ann. §§ 36-1-102(1)(A)(iii), (iv) and 36-1-113(g)(1). Although there is no "T.C.A. 36-1-102(a)(1)§(3)," the petition also alleged that Father abandoned his child by "willfully fail[ing] to visit or willfully fail[ing] to make reasonable payments toward the support of the child's mother during the four months immediately preceding the birth of the minor child." Stating the facts that supported a ground for termination was sufficient. *See* TENN. R. CIV. P. 8.05(1) (allowing the pleader to "either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged"). The petition further alleged that Father was "incarcerated at the time of the institution of this action" and that he had "engaged in conduct prior to incarceration that exhibits of [sic] disregard for the welfare of the child."

The petition also alleged failure to manifest an ability and willingness to assume custody or financial responsibility for the child. *See* Tenn. Code Ann. § 36-1-113(g)(14). According to the petition, Father "failed to manifest an ability and willingness to assume legal and physical custody of the minor child" and "that placing custody of the child in the Respondent[']s legal and physical care would pose a risk of substantial harm to the physical or psychological welfare of the child."

B.

For his first two issues on appeal, Father contends that the evidentiary burden was not met for two of the statutory grounds for parental termination relied on by the trial court. Although Father has not taken issue with all the grounds relied on by the trial court, we "must review the trial court's findings as to each ground for termination . . . regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016).

1.  Abandonment

    a.  By Failure to Visit or Support Expectant Mother

One of the statutory grounds for termination of parental rights is "[a]bandonment by the parent." Tenn. Code Ann. § 36-1-113(g)(1). Abandonment as a ground for termination is defined in five different ways. *See id.* § 36-1-102(1)(A) (defining the term "abandonment"). The third definition of "abandonment" applies in cases in which "[a] biological or legal father has either failed to visit or failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child." *Id.* § 36-1-102(1)(A)(iii).

The evidence clearly and convincingly supports terminating Father's parental rights on this ground of abandonment. The proof revealed that Mother informed Father that she was pregnant with Ashlynn before she was showing. Father made no payments toward Mother's support. And Mother's insurance and the prospective adoptive parents paid for the cost of the birth. Mother testified that Father offered her support once, when she was approximately six months pregnant. Although Mother accepted the offer, Father never followed through.

Father argues that his failure to support Mother was not willful. He claims that he attempted to support Mother while she was pregnant and asked several times if she needed help. But, according to Father, Mother "rebuffed" his offers.

The lack "of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rule of Civil Procedure" to the ground of abandonment. *Id.* § 36-1-102(1)(I). Father failed to plead the absence of willfulness in either of his responses to the petition to terminate parental rights. So he waived the absence of willfulness as a defense to the ground of abandonment by failure to support. *See* TENN. R. CIV. P. 12.08; *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 735 (Tenn. 2013).

Even had the defense not been waived, the burden fell on Father to prove his failure to support was not willful. Tenn. Code Ann. § 36-1-102(1)(I). The only proof Father points to that might indicate a lack of willfulness was his own testimony that he offered to provide support to Mother. But the trial court found that Father's testimony was not credible. We find no basis to disregard that assessment. *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (recognizing that appellate courts do "not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary"). So the record contains no proof to support Father's contention.

b. By Wanton Disregard

At the time the petition to terminate was filed,[1] the fourth definition of "abandonment" applied in cases in which the parent is incarcerated when the petition to terminate is filed or had been incarcerated within the four-month period preceding the filing of the petition and "contain[ed] two distinct tests for abandonment." *In re Audrey S.*, 182 S.W.3d 838, 865 (Tenn. Ct. App. 2005). One test examined pre-incarceration visitation and support, and the other examined the pre-incarceration conduct of the parent. The incarcerated or formerly incarcerated parent was deemed to have abandoned a child if he or she:

> either ha[d] willfully failed to visit or ha[d] willfully failed to support or ha[d] willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's . . . incarceration, or the parent . . . ha[d] engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2017).

The proof established that Father was incarcerated for part of the four months preceding the filing of the petition to terminate. Here, the question is whether the proof showed that Father's pre-incarceration conduct exhibited a wanton disregard for his newborn child's welfare.

"Wanton disregard" is not a defined term, but "actions that our courts have commonly found to constitute wanton disregard reflect a 'me first' attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child." *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015). The court may consider all evidence relevant to determining "whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866. In *In re Audrey S.*, we held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 867-68.

We conclude that Mother and the prospective adoptive parents failed to meet their burden of proving that Father's pre-incarceration conduct exhibited wanton disregard for his child's welfare. On several occasions, we have held that a parent can engage in conduct exhibiting wanton disregard for the welfare of the child even during pregnancy so long as

---

[1] This ground for termination was rewritten in 2020. 2020 Tenn. Pub. Acts 43.

the parent knows of the child's existence. *See, e.g.*, *In re Jeremiah N.*, 2017 WL 1655612, at *6 (affirming the ground of wanton disregard when, after father learned of the mother's pregnancy with the child but before the child's birth, he continued to engage in criminal behavior and was convicted of the offense for which he was currently incarcerated); *In re Jamazin H.M.*, No. W2013-01986-COA-R3-PT, 2014 WL 2442548, at *9 (Tenn. Ct. App. May 28, 2014) ("The offenses for which [f]ather is currently incarcerated—possession of cocaine with intent to sell, unlawful possession of a firearm, and others—were committed while [m]other was pregnant with [the child]."); *In re O.J.B.*, No. W2009-00782-COA-R3-PT, 2009 WL 3570901, at *5 (Tenn. Ct. App. Nov. 2, 2009) (affirming the ground of wanton disregard because the child was born with cocaine in her system and mother pled guilty to several criminal charges after the child's birth); *cf. In re Mac L.*, No. E2016-00674-COA-R3-PT, 2016 WL 6876498, at *7 (Tenn. Ct. App. Nov. 22, 2016) (concluding that father's pre-incarceration conduct need not directly impact the child in a negative way to support a finding of wanton disregard). The evidence in the record fails to establish precisely when Father was incarcerated or when he knew of the child's existence. Father was aware of Mother's pregnancy at least four months prior to Ashlynn's birth. And he was incarcerated at some point between Ashlynn's birth and the filing of the petition. But the proof does not show that the wanton conduct relied on by the trial court occurred after Father became aware of Mother's pregnancy.

2.  Failure to Manifest an Ability and Willingness to Assume Custody or Financial Responsibility

The trial court also found termination of parental rights appropriate under Tennessee Code Annotated § 36-1-113(g)(14). Under this ground, a parent's rights may be terminated if he

> [1] has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and [2] placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). Both the first and second prongs must be established by clear and convincing evidence. *In re Neveah M.*, 614 S.W.3d 659, 677-78 (Tenn. 2020). As to the first prong, the petitioner may prove either that a parent is unable or unwilling to "assume legal and physical custody or financial responsibility of the child." *Id.* at 677.

We conclude that clear and convincing evidence also supported terminating Father's parental rights on the ground of failure to manifest an ability and willingness to assume financial responsibility of his child. The proof showed that Father, who was 23 years old at trial, did not have a history of steady employment. He had been employed at his current job for only two weeks, making "[l]ike $300 a week." By his own admission, two weeks

was the longest period he had ever held a job. In the years leading up to the trial, Father had been in and out of jail. Father had previously collected disability for "a nerve problem in [his] hands," but he lost his disability payments when he went to prison in 2014.

Father testified that he hoped to get a raise at his current job in a couple of months. And he hoped to get back on disability. When questioned about how he would assume financial responsibility for Ashlynn given his current circumstances, Father said he would rely on family to help.

Father also lacked stable housing and his own means of transportation. According to Father, he had lived with his grandmother most of his life. He briefly lived with Mother's parents while they were together. At trial, Father shared a two-bedroom apartment with a woman and her two children, but he was not on the lease or contributing to the rent. Father testified that he would rely on his roommate for transportation.

The evidence is equally clear and convincing that putting the child in Father's custody would pose a risk of substantial harm to her physical or psychological welfare. Father has convictions for both domestic assault and assault while he was in jail. He physically threatened Mother while she was pregnant and after she had the baby. Mother resorted to blocking Father from all methods of contact. The proof also showed a history of recent drug use by Father. Mother claimed that she had witnessed Father using methamphetamine approximately one month before the trial. Father only admitted to using marijuana in Mother's presence. He claimed to have last used methamphetamine "[a]lmost four months ago, five months ago."

C.

Father's final issue on appeal relates to Ashlynn's best interest. Because "[n]ot all parental misconduct is irredeemable," our parental termination "statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interests." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005). So even if a statutory ground for termination is established by clear and convincing evidence, we must also determine whether termination of parental rights is in the child's best interests. Tennessee Code Annotated § 36-1-113(i) lists nine factors that courts must consider in making a best interest analysis. The "factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis." *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017). In reaching a decision, "the court must consider all of the statutory factors, as well as any other relevant proof any party offers." *Id.* at 682. The best interest analysis is a fact-intensive inquiry, and each case is unique. *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004).

The parental termination statute requires "an order that makes specific findings of fact and conclusions of law." Tenn. Code Ann. § 36-1-113(k). Factual findings both

"facilitate appellate review" and safeguard the important rights at stake in a termination proceeding. *In re Angela E.*, 303 S.W.3d at 251. As our supreme court has observed, this Court "routinely remand[s] contested termination cases to the trial court for failure to make findings of fact and/or conclusions of law, whether related to the grounds for termination or the child's best interests." *Id.* at 251.

Here, the court concluded that it "ha[d] been proven by clear and convincing evidence that it is in the best interest of the minor child, Ashlynn . . . , for the parental rights of the biological parents, [Mother and Father], to be terminated in and to said child." But the court's order, which incorporated by reference a transcript of findings made in open court, includes no factual findings specific to its best interest determination. The order also makes no reference to the statutory best interest factors. So we cannot discern whether all of the statutory factors were considered. Under the circumstances, we find it necessary to remand the case to the trial court to make appropriate findings relative to the child's best interest. *See id.* at 255; *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142, 151 (Tenn. Ct. App. 2007).

## III.

The record contains clear and convincing evidence to support terminating Father's parental rights on two grounds. But we are unable to review the court's best interest determination because of a lack of specific findings of fact. So, we vacate the judgment terminating Father's parental rights. The case is remanded for specific findings of fact and conclusions of law as required by Tennessee Code Annotated § 36-1-113(k) and such other proceedings as are necessary and consistent with this opinion. Consistent with the requirements of Tennessee Code Annotated § 36-1-124(a), the trial court is directed to expedite the case on remand.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

10